RUTH GORDON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gordon v. Commissioner
Docket No. 13039-84.
United States Tax Court
T.C. Memo 1987-344; 1987 Tax Ct. Memo LEXIS 344; 53 T.C.M. (CCH) 1331; T.C.M. (RIA) 87344; July 13, 1987
*344 From 1973 until 1979, petitioner was a vice-president of Medfield Corporation. In 1976 and 1977, petitioner was granted options to purchase Medfield stock. Petitioner exercised these options in 1979 after Medfield's merger with National Medical Enterprises, Inc., but prior to termination of her employment. Held: The options were not exercised in a timely manner under sec. 251(c) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 259. Therefore the options do not qualify as incentive stock options under sec. 422A and ordinary income must be recognized in 1979. Ruth Gordon, pro se. Max K. Boyer and John S. Winkler, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioner's 1979 Federal income tax in the amount of $ 13,729. The issue for decision is whether gain realized from the exercise of certain stock options granted by petitioner's employer should be recognized as ordinary income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Tampa, Florida. From 1973 through 1979 petitioner was employed as a vice president of the Medfield Corporation (Medfield). On June 23, 1976, petitioner was granted an option to purchase 900 shares of Medfield common stock at a price of $ 4.25 per share. The option price reflected the highest quoted value of such stock for that date on the Pacific and Boston Stock Exchanges. [1]
*346 On November 1, 1977, petitioner was granted an option to purchase 2,600 shares of Medfield stock at a price of $ 10.125 per share. Pursuant to each of these stock option agreements, the options could only be exercised while petitioner was actually employed by Medfield, or within 3 months after termination of such employment, unless termination was due to petitioner's death, in which case the 3 months would be extended to 1 year. On February 28, 1979, Medfield and National Medical Enterprises, Inc. (NME), were merged, with NME as the surviving corporation. While the Medfield options stated that they would terminate if the company became a party to a merger in which it was not the surviving company, NME's proposal for acquisition granted each Medfield option holder a substitute option to purchase NME stock. As a result, petitioner's options to purchase Medfield shares were converted to options to purchase NME shares. The conversion formula reflected the disparity in fair market values between Medfield common stock and NME common and preferred stock. Petitioner exercised her options to purchase shares of NME stock on May 23, 1979. Her employment with NME was terminated as June 23, 1979. *347 OPINION The first issue for decision is whether section 422A [2] as added by section 251(a) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 259, applies to the options exercised by petitioner on May 23, 1979, thereby entitling such options to favorable tax treatment under section 421(a). Section 421(a) provides that the transfer of stock to an individual pursuant to the exercise of an option meeting the requirements of section 422A shall not result in income to the transferee, and any gain upon disposition will be capital gain. Pursuant to section 251(c)(1)(A) of ERTA, section 422A is applicable only to options granted on or after January 1, 1976, and exercised after December 31, 1980, or outstanding on such later date. It is respondent's position that petitioner did not timely exercise her options and that the gain realized upon their exercise in 1979 should be ordinary income at that time. Petitioner concedes that the options were not exercised in a timely manner; however, petitioner argues that section 422A should apply, since she would have held the options until they could have been timely exercised had she not been forced to exercise her options *348 by the merger of Medfield into NME. Because petitioner's options were exercised prior to January 1, 1981, they fall outside the scope of section 422A.[3] Petitioner argues that she was forced to exercise her options following the merger of Medfield into NME and asks this Court to make an exception to the rules of ERTA section 251(c). However, these transitional rules and effective dates are the mandate of Congress and this Court is of course bound to apply the law as written. Donigan v. Commissioner,68 T.C. 632, 636 (1977). Once any stock option granted an employee is *349 stripped of its preferential treatment, the employee is left with compensation, pure and simple, which in the vast majority of cases is taxed as ordinary income upon receipt. When nonqualified stock options are exercised, thereby becoming transferrable, section 83 requires that the excess of the fair market value over the amount paid for such property shall be included in the gross income of the employee. Consequently, we decide this issue for respondent. Decision will be entered for the respondent.
Footnotes
1. Prior to May 23, 1979, Medfield increased the number of shares subject to this option to 1,089 to avoid dilution through the declaration of stock dividends, and petitioner partially exercised this option to the extent of 726 shares. This partial exercise is not at issue here. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. It should also be noted that the requirements of ERTA section 251(c)(1)(B) have not been complied with in that Medfield did not file an election to have section 422A apply. See sec. 14a.422A-1, Q-4 and A-4, Temp. Income Tax Regs., 46 Fed. Reg. 61839 (Dec. 21, 1981), 1982-1 C.B. 70↩.